UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| BRETT MINGIE, )<br>   Plaintiff )<br>)<br>) Case No. 4:14-CV-45<br>v. ) (MATTICE/CARTER)<br>)<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner of Social Security )<br>   Defendant ) | |

<u>REPORT AND RECOMMENDATION</u>

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's Motion for Judgment on the Pleadings (Doc. 15) and Defendant's Motion for Summary Judgment (Doc. 17).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

<u>Plaintiff's Age, Education, and Past Work Experience</u>

Plaintiff was 37 years old at the time of the administrative hearing (Tr. 34). Plaintiff reported two years of college education and had past relevant work experience as a cashier, pizza delivery driver/cook, fast food preparer and waiter, guard service security officer, and print shop assistant (Tr. 196, 200).

## Applications for Benefits

Plaintiff protectively filed his applications for disability insurance benefits under Title II, and for SSI under Title XVI, on May 20, 2011 (Tr. 136-39, 140-45). He alleges a disability onset date of January 18, 2009 (Tr. 136,195-96). His application was denied initially and upon reconsideration. Plaintiff then requested a hearing which was held before an Administrative Law Judge ("ALJ"). On February 27, 2013, following a hearing, an ALJ found that Plaintiff was not under a "disability" because he retained the functional capacity to perform work existing in significant numbers in the national economy (Tr. 11-23). Plaintiff appealed to the Appeals Council. The Appeals Council declined to review the claim (Tr. 1-7). Plaintiff timely filed a complaint with this Court. This case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); Abbot v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in

significant numbers in the regional or the national economy he/she is not disabled. Id. If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; Skinner v. Secretary of Health & Human Servs., 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. Richardson v. Secretary, Health and Human Servs., 735 F.2d 962, 964 (6th Cir. 1984); Noe v. Weinberger, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); Landsaw v. Secretary, Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994) (citing Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir. 1986)); Crisp v. Secretary, Health and Human Servs., 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since January

3

18, 2009, the alleged onset date (20 CFR 404.1571 *et seq*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: attention deficit hyperactivity disorder (ADHD), hyperactive, impulsive; bipolar I disorder, manic; rule-out Asperger's disorder; spondylolisthesis; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to climb ramps or stairs occasionally, never climb ladders ropes or scaffolds, and can frequently balance, stoop, kneel, and crawl. He should not operate heavy machinery. He can carry out simple, as well as detailed, instructions and tasks, but cannot carry out instructions and tasks at an executive level. The claimant can maintain attention, concentration, persistence and pace in 2 hour segments of time, with customary breaks between segments. He can tolerate occasional superficial contact with the public, occasional interaction with coworkers, is best suited for object based work, and can tolerate infrequent changes in the work environment.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on _____ __, 1975 and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569,

4

404.1569(a), 416.969, and 416.969(a)).

(Tr. 13-22).

## Issues Presented

1. Whether the ALJ properly considered Plaintiff's treating sources at the Shriner's Hospital and Clinic?

2. Whether Plaintiff was disabled because of pain?

3. Whether Plaintiff can work on a continuing and sustained basis?

## Relevant Facts

Plaintiff's medical treatment is set forth in detail in the ALJ's Administrative Decision (Tr. 11-23) and in Plaintiff's Memorandum. I will not repeat it here but will refer to relevant portions of it in the analysis section.

The ALJ found that Plaintiff's impairments would not preclude him from performing work that exists in significant numbers in the national economy, including work as a stuffer, burr grinder, and buttoner (Tr. 22). Consequently, the ALJ found that Plaintiff was not disabled (Tr. 22-23).

## Analysis

1. The evaluation of the treating sources:

Plaintiff argues that the ALJ gave little weight to the opinions of his treating physicians with the Shriner's Hospital and Clinic, where he had spinal surgery in the 1990's. He argues this requires a sentence four remand (Doc. 16, Plaintiff's Brief, pp. 6-9). The Commissioner responds that these medical opinions are remote in time, therefore entitled to little weight.

The Social Security Act provides that the Commissioner is responsible for deciding whether a claimant is disabled or not disabled. See 42 U.S.C. § 405(b)(1). The ALJ, and not a

5

doctor, has the responsibility of deciding issues reserved for the Commissioner, such as a claimant's RFC and whether a claimant is disabled or not disabled. See 20 C.F.R. §§ 404.1527(d), 404.1546(c); SSR 96-5p, 1996 WL 374183, at *2. The assessment of a claimant's RFC is "based on all the relevant evidence in [the claimant's] case record," and not simply on doctors' opinions. 20 C.F.R. § 404.1545(a)(1). The ALJ had the responsibility of deciding the weight to accord a doctor's opinion, as with any evidence in the record. See 20 C.F.R. §§ 404.1527, 404.1545, 404.1546(c); Richardson v. Perales, 402 U.S. 389, 399 (1971); Warner, 375 F.3d at 391. When according weight to the opinion of a treating source, the opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); see Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013); Hensley v. Astrue, 573 F.3d 263, 266 (6th Cir. 2009) (quoting Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 548 (6th Cir. 2004)). When an ALJ determines he will not give controlling weight to a treating source opinion, he must provide "good reasons for his decision." See 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). The ALJ's good reasons must be supported by the evidence in the case record and sufficiently specific to make clear to any subsequent reviewers the weight the ALJ gave to the treating source's opinion and the reasons for that weight. See Wilson, 378 F.3d at 544; SSR 96-2p, 1996 WL 374188, at *5. An examining doctor's opinion, however, is not entitled to any special deference or consideration. See Smith v. Comm'r of Soc. Sec., 482 F.3d at 876; Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).

6

Plaintiff argues it was error to give little weight to, and not fully evaluating, the opinions of his doctors, including Dr. Brad Presnal and Dr. Steve Frick, from Shriner's Hospital and Clinic ("Shriner's"), where Plaintiff sought treatment in the 1990's. See Pl.'s Br., pp. 6-9. For reasons that follow, I do not agree.

On May 17, 1993, Dr. Presnal saw Plaintiff after spinal fusion surgery and instructed him to avoid heaving lifting, avoid running, and limit lifting to 20 pounds (Tr. 261). On July 31, 1995, Dr. Frick stated that Plaintiff should avoid heavy lifting of no more than 25 pounds, and avoid repetitive bending and twisting activities at work (Tr. 257).

In considering the medical opinion evidence, the ALJ considered the physical limitations set forth by Plaintiff's physicians at Shriner's and gave them little weight (Tr. 21). The ALJ reasoned that these limitations were "remote to the claimant's alleged onset date of disability" (Tr. 21). The ALJ also reasoned that the report of consultative examining physician, Dr. Deborah Morton and Plaintiff's reported activities discussed in his decision, more accurately reflected Plaintiff's physical capabilities (Tr. 21). Here the reports and opinions of Plaintiff's doctors at Shriner's are so remote in time that they are not relevant to Plaintiff's current case. These opinions were rendered nearly 15 ½ and 13 ½ years prior to Plaintiff's January 18, 2009 alleged onset date of disability (Tr. 136, 253, 257). As the Commissioner notes, these doctors did not indicate that such limitations were permanent. Plaintiff completed two years of college and worked for many years in various occupations following his back surgery in the early 1990's (Tr. 38, 150-51, 158, 161, 167-72, 386). Also, as noted by the Commissioner, the limitations given by these physicians following Plaintiff's spinal fusion surgery are not even completely inconsistent with the light level RFC limitations the ALJ found to exist during the relevant

7

period (Tr. 17, 253, 257). A medical condition that was present during working years and has not significantly worsened does not support disability at the time of the ALJ's decision. See Bowen v. Soc. Sec. Admin., No. 14-5079, 2014 WL 5565100, at *2 (6th Cir. Nov. 3, 2014) ("Given that Bowen performed light or medium work until the alleged onset date of disability and that there is no credible medical evidence or testimony showing that she subsequently developed limitations precluding light work, substantial evidence supported the ALJ's RFC determination.").

I conclude the ALJ properly relied on more recent and relevant evidence to assess Plaintiff's degree of limitation since his alleged onset of disability including the report of Dr. Morton and Plaintiff's reported activities of daily living (Tr. 21, 382-83). Dr. Morton examined Plaintiff on July 11, 2011, and observed a normal gait and station, normal back flexion, and only minimally decreased back extension (Tr. 20-21, 382).

Plaintiff's activities of daily living also supported the ALJ's finding regarding his functional abilities. The evidence shows that Plaintiff worked as a part-time security monitor at his apartment complex, read, watched television, visited with friends that lived in his apartment complex, had a fiancé, went shopping, cooked, drove, did laundry and dishes, attended church, visited his father in Knoxville, checked the computer and used Facebook, and reported filling out employment applications during the relevant period (Tr. 19, 34-36, 40-42, 177-79, 183-84, 345, 361-62, 386-87, 415).

For all of those reasons, I conclude the ALJ did not err in giving little weight to the reports and opinions of Plaintiff's doctors from Shriner's. Their reports were far too remote to Plaintiff's alleged onset date of disability to be relevant. I agree with the Commissioner that it

8

would serve no useful purpose to require remand for a more extensive discussion of this issue.

      2. <u>The Evaluation of Subjective Complaints of Pain:</u>

Plaintiff also argues that he is disabled due to pain and that the ALJ improperly rejected his subjective allegations and found him capable of performing work on a continuing and sustained basis. <u>See</u> Pl.'s Br., pp. 9-14. Although an ALJ may consider subjective complaints as evidence in support of a disability, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." <u>Schmiedebusch v. Comm'r of Soc. Sec.</u>, 536 F. App'x 637 (6th Cir. 2013) (quoting <u>Jones v. Comm'r of Soc. Sec.</u>, 336 F.3d 469, 475–76 (6th Cir. 2003)). An ALJ's credibility determination is entitled to "great weight and deference" and the review is limited to determining whether the ALJ's reasons for discrediting the allegations are reasonable and supported by substantial evidence in the record. <u>Id.</u>

In this case, the ALJ properly evaluated Plaintiff's credibility in a manner that was consistent with SSA's regulations and policies. <u>See</u> 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. Credibility determinations rest with the ALJ, and "[a]s long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." <u>Ulman v. Comm'r of Soc. Admin.</u>, 693 F.3d 709, 713–14 (6th Cir. 2012). After considering the entire record, the ALJ found that Plaintiff had severe medical impairments that limited him to a light range of work with additional postural and mental limitations (Tr. 17). However, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (Tr. 17-18).

9

The ALJ discussed Plaintiff's alleged physical and mental limitations and set forth the evidence he relied on in making this determination (Tr. 18-21). While Plaintiff alleged disabling back pain, the ALJ noted that the record showed very little treatment for this condition since Plaintiff's alleged onset date of disability (Tr. 18, 275-80, 287, 294-95, 327, 382), that Plaintiff was not taking prescription pain medication and went long periods of time without treatment (Tr. 18, 327-28, 384, 387, 389), and that physical examinations did not reveal disabling objective findings (Tr. 18, 382, 400). An ALJ may consider the medical evidence in evaluating Plaintiff's subjective complaints, although the ALJ may not reject subjective complaints "solely" on this basis. Kirkland v. Comm'r of Soc. Sec., 528 F. App'x 425, 427 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1529, and noting that ALJ also considered medical opinion evidence). An ALJ's evaluation of the medical evidence is not an improper substitution of medical judgment because "the regulations require the ALJ to evaluate the medical evidence to determine whether a claimant is disabled." Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 726-27 (6th Cir. 2013) (citations omitted).

The record does not support the presence of disabling mental limitations (Tr. 18). The ALJ considered Plaintiff's sporadic treatment (Tr. 18, 43-44, 328, 351-80, 385, 387), inconsistencies between Plaintiff's testimony and the medical treatment record regarding his alleged sleepiness and fatigue and the reasons he quit his job as a pizza delivery driver (Tr. 18, 37-38, 43-45, 327, 387). He considered Plaintiff's average intelligence scores and ability to obtain a two-year degree in graphic design (Tr. 18-19, 38, 328-30, 386). An ALJ may find an individual not credible when, among other reasons, the allegations are inconsistent with the medical evidence. See Temples v. Comm'r of Soc. Sec., 515 F. App'x 460, 462 (6th Cir.

10

2013) ("The ALJ reasonably discounted Temples' testimony concerning the severity of her pain because her testimony was inconsistent with the medical evidence in the record.").

As set forth above, the ALJ considered Plaintiff's activities of daily living, including his continued part-time work as a security monitor at his apartment complex, and found that such activities "do not support a finding of disabling physical and mental impairments" (Tr. 19, 34-36). The ALJ may consider daily activities as one factor in the evaluation of subjective complaints. See Temples v. Comm'r of Soc. Sec., 515 F. App'x 460, 462 (6th Cir. 2013) ("Further, the ALJ did not give undue consideration to Temples' ability to perform day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible."). Furthermore, an ALJ may consider an individual's work during a period of time in which he was alleging disability. See Miller v Comm'r of Soc. Sec., 524 F. App'x 191, 194 (6th Cir. 2013) ("Further, the ALJ did not err by considering Miller's ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled.") (citing 20 C.F.R. §§ 404.1529(c)(3), 404.1571, 416.929(c)(3), 416.971).

The ALJ considered the testimony by Plaintiff's sister, Angela Terry, but noted inconsistencies between her testimony and the medical evidence and found her testimony not fully credible (Tr. 19). While Ms. Terry testified that Plaintiff had to be re-taught anything and that others would find it difficult to get along with him (Tr. 48-49), the ALJ noted that Plaintiff's sister reported to Kimberly Rush, L.P.C., on September 29, 2010, that Plaintiff had an excellent memory and was brilliant (Tr. 19, 364, 379). The ALJ also noted that Plaintiff displayed logical and goal-directed thought processes, performed four of five serial sevens subtractions correctly,

was able to read, write, carry out a written command, and carry out a three-point verbal command, and displayed a friendly nature during a July 13, 2011 consultative examination (Tr. 19, 388-89). The Commissioner argues that the ALJ adequately accounted for Plaintiff's credible degree of social impairment by limiting him to superficial contact with the public and occasional interaction with coworkers (Tr. 17). A finding concerning the credibility of third party evidence may involve the same evidence used to find a claimant not credible. See Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992).

Plaintiff also objects to the ALJ's consideration of his global assessment of functioning (GAF) scores of 51[1] as supporting his findings arguing that "[s]omehow the ALJ reasoned that his GAF score of 51 was not a severe restriction" (Tr. 20, 365, 367, 369, 375, 379, 424). See Pl.'s Br., pp. 12-13. However, the ALJ did not find that Plaintiff did not have severe mental impairments. The ALJ found that Plaintiff's severe impairments included ADHD, Bipolar disorder, and rule-out Asperger's disorder (Tr. 13). Due to these limitations and the extent of limitations supported by the entire record, the ALJ reduced Plaintiff's functional capacity to carrying out simple and detailed instructions and tasks but not at an executive level, maintaining attention, concentration, and pace in two-hour segments, tolerating occasional superficial contact with the public and occasional contact with coworkers, and tolerating infrequent changes in the

---

1 GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." Kovnecky v. Comm'r of Soc. Sec., 167 Fed. App'x. 496, 503 n.7 (6th Cir. 2006). Scores may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning. See id. (citing Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)). A GAF score of 51 to 60 indicates "moderate symptoms . . . or moderate difficulty in social, occupational, or school functioning." Id.

12

work environment (Tr. 17). While the ALJ found that Plaintiff's mental impairments were severe and caused these limitations, he did not find them disabling. The GAF scores of 51, which are indicative of moderate symptoms, support the ALJ's findings (Tr. 20).

Substantial evidence on the record as a whole supports the ALJ's evaluation of Plaintiff's subjective complaints and determination of his RFC.

### 3. Whether Plaintiff can Work on a Continuing and Sustained Basis:

Plaintiff next argues that based on the activities described by Plaintiff, his sister Angela Terry and the clinicians at the Guidance Center, he cannot work on a regular and continuing basis. However, as set out above, the ALJ was not required to accept the testimony of Plaintiff's sister in light of the inconsistencies shown. The ALJ first determined Plaintiff's RFC.

After determining Plaintiff's RFC, the ALJ compared it to Plaintiff's past work and determined that he could not perform any past relevant work (Tr. 21). Thus, the ALJ acknowledged that the burden shifted to the Commissioner to produce evidence of other work existing in significant numbers that Plaintiff could perform based on his age, education, work experience, and RFC (Tr. 22).

To meet the Commissioner's burden at step five of the sequential evaluation, the ALJ utilized a vocational expert (Tr. 22, 53). In response to a hypothetical question based on an individual of Plaintiff's age, education, work background, and RFC, the vocational expert testified that such individual could perform light and unskilled work existing in significant numbers as a stuffer, burr grinder, and buttoner (Tr. 22, 55-56).

Because the hypothetical question included those impairments the ALJ found credible, and excluded those he discredited for legally sufficient reasons, the vocational expert's testimony

that Plaintiff could perform work existing in significant numbers, is substantial evidence in support of the ALJ's determination. See Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512–13 (6th Cir. 2010) (VE's testimony in response to hypothetical question accurately portraying claimant's vocational abilities and limitations can provide substantial evidence to meet burden at step five). Looking at the evidence as I whole I conclude there is substantial evidence to support these findings.

## Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND:

> (1) The plaintiff's motion for judgment on the pleadings (Doc. 15) be DENIED.
>
> (2) The defendant's motion for summary judgment (Doc. 17) be GRANTED.
>
> (3) The case be DISMISSED. [2]

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).